AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
At Albuquerque NM
AUG 3 1 2018

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No. 18-MR-818
The Items Described in Attachment A )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Judicial_____ District of _____New Mexico_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Prohibited Person in Possession of a Firearm |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Joseph Sainato, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 08/31/2018

_____
Judge's signature

City and state: Albuquerque, New Mexico      Honorable Jerry H. Ritter, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ITEMS DESCRIBED IN ATTACHMENT A, CURRENTLY IN THE POSSESSION OF THE FEDERAL BUREAU OF INVESTIGATION, ALBUQUERQUE, NEW MEXICO | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT TO SEARCH AND SEIZE

I, Joseph Sainato, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices described in Attachment A—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

**Background of Affiant**

2. I have worked for the Federal Bureau of Investigation (FBI) for approximately 10 years and am currently employed as a Special Agent for the FBI, United States Department of Justice, and am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C). Prior to becoming a Special Agent, I was an Investigative Specialist for the FBI. As a FBI Special Agent, I primarily investigate drug trafficking organizations and gang-criminal enterprises. I have earned a Bachelor's degree in Sociology/Criminology and Law Enforcement from the University of Akron and have received in excess of 800 hours of formal training from the FBI. I have also received on the job training from other experienced agents, officers, and detectives from federal, state, and local agencies,

who have been recognized in the courts as experts in the investigation of drug and firearms trafficking organizations.

3. I have participated in investigations of drug distribution, firearms trafficking, and gang/criminal enterprises. My investigative training and experience includes, but is not limited to, conducting surveillance, interviewing subjects, targets and witnesses, writing affidavits for and executing search and arrest warrants, managing cooperating sources, issuing subpoenas, and analyzing public records. Through my training and experience, I am familiar with the methods and means used by individuals, gang members and drug trafficking organizations to purchase, transport, store, and distribute controlled substances.

4. I also know that gang members often utilize multiple cellular telephones to conduct their criminal activities and that they frequently change their phone numbers. These cellular telephones often contain names and phone numbers of other co-conspirators, text messages utilized to direct, further and/or "show off" their illicit activities, as well as photographs and videos of controlled substances, drug proceeds, and firearms. Gang members will often take and maintain photographs of themselves wearing gang-related clothing, displaying "gang signs" and/or holding firearms. These photographs are sometimes shared with other gang members through messaging applications and/or displayed on social media.

5. I know that digital photographs, such as those stored on cellular phones, hard drives, removable data storage devices, media storage devices, CDs and DVDs often contain additional identifying data, such as the date, time and location of when/where the photograph was taken. Forensic examination of such data may also indicate whether or not a photograph has been altered or changed after it was taken.

6. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICES TO BE EXAMINED

7. The property to be searched is: a Samsung cellular telephone, Model number SM-J327T1, IMEI number 355417092719134; hereinafter the "Device." The Device is currently maintained by the FBI in Albuquerque, New Mexico. The applied-for warrant would authorize

the forensic examination of the Device for the purpose of identifying electronically stored data described in Attachment B.

## PROBABLE CAUSE

1. On August 3, 2018, I was contacted by New Mexico Corrections Department (NMCD) Probation and Parole Officer (PPO) Eric Nagel and asked to assist members of the NMCD Probation and Parole Division (PPD) with a home visit and search of Burquenos gang member Steve MIRABAL, date of birth in 1990, at MIRABAL's residence, located at 300 Dorado Place SE, Apartment T2, Albuquerque, New Mexico (MIRABAL's residence). PPO Nagel advised me that MIRABAL was on supervised release and had a search clause within his conditions of release, authorizing PPD Officers to search his residence and person at any time. MIRABAL is a convicted felon and prohibited from possessing firearms. His criminal history includes convictions for the following felony offenses: Residential Burglary in 2014, Aggravated Battery in 2014 and Conspiracy to Commit Residential Burglary in 2014.

2. On August 6, 2018, I accompanied PPO Nagel, PPO Thomas Weaver and PPO Mike Hallberg as they performed a NMCD PPD home visit and search of MIRABAL's residence. PPD Officers arrived at approximately 8:55am and knocked on the door, to which there was no answer. After a period of time, PPD Officers attempted to make telephonic contact with MIRABAL, which was also unsuccessful. PPD Officers again knocked on the door of MIRABAL's residence and were then met by Victoria GARCIA, wife of MIRABAL, who indicated that MIRABAL was in the upstairs bedroom. PPD Officers Nagel, Weaver and Hallberg entered the residence and made contact with MIRABAL in the upstairs bedroom. I waited with GARCIA in the living room of the residence. PPD Officers Nagel, Weaver and Hallberg placed MIRABAL in handcuffs, seated him at the dining table and performed a search of the residence. PPD Officers discovered a loaded .45 caliber handgun in a purse in the bedroom closet. Referenced purse also contained GARCIA's wallet and driver's license.

3. PPD Officers also located a handgun holster and handgun magazine pouches in a dresser drawer, various items of drug paraphernalia in the bedroom closet, brass knuckles, several knives, a digital scale, a hard, black substance and the Device. PPD Officers further

located a jar of .45 caliber rounds in the downstairs closet and .38 caliber rounds in GARCIA's vehicle.

4. PPD Officers seized the Device, which was in the bed next to MIRABAL when PPD Officers first made contact with him. MIRABAL told PPO Nagel that both he and GARCIA used the Device and that he used the Device daily to call the PPD to determine if he was scheduled for a urinary analysis, which PPO Nagel later confirmed. MIRABAL's use of the Device authorized PPD Officers to search it, per his conditions of release. Upon searching the Device, PPD Officers discovered the Device contained several photographs of MIRABAL holding the .45 caliber handgun that PPD Officers located in the bedroom closet. PPO Nagel showed me the photographs on the Device, which clearly depicted MIRABAL holding the seized handgun. In one of said photographs, MIRABAL is holding the handgun next to his head and "FEG," the manufacturer's logo, is clearly visible on the slide.

5. At approximately 9:30am, I read MIRABAL his Miranda Rights. MIRABAL indicated he understood his rights and was willing to speak with me. MIRABAL stated he was no longer a Burquenos gang member and had been assaulted by other Burquenos gang members before his release on January 6, 2018.

6. MIRABAL stated that the firearm that PPD Officers located in MIRABAL's residence belonged to his wife, Victoria GARCIA, and that she possessed it for protection. MIRABAL stated that the jar of .45 caliber ammunition belonged to his father, who had left said jar at MIRABAL's residence. The small digital scale belonged to GARCIA as well, which she used to weigh marijuana. MIRABAL admitted that he took cell phone photographs of himself holding the .45 caliber handgun that had been seized by officers. MIRABAL stated that it had been a long time since he had held a gun before he took said photographs. I indicated that PPD Officers had found a handgun holster and magazine pouches in MIRABAL's dresser drawer. Without knowing which drawer I was referring to, MIRABAL stated that those were in a drawer of miscellaneous items that were both his and GARCIA's.

7. Officers Nagel, Weaver and Hallberg took MIRABAL into custody for violating the conditions of his supervised release and transported him to the Metropolitan Detention Center. PPO Hallberg called Task Force Officer (TFO) Eric Kuebler who arrived and took

4

custody of the firearm and several other items of evidence, which he booked into Bernalillo County Sheriff's Office evidence.

8. The firearm seized from MIRABAL's residence was a .45 caliber FEG model GKK-45C, bearing serial number AA007248, which I subsequently unloaded and made safe, noting a round in the chamber and multiple rounds in the magazine.

9. I know from my training, experience and research that FEG firearms are manufactured outside of New Mexico, and the specified pistol meets the federal definition of a "firearm."

10. Based on the above information, I believe the Device contains evidence of MIRABAL in possession of the above-described firearm, in violation of 18 U.S.C § 922(g)(1).

11. The Device was initially seized by NMCD PPD Officers and remained in their custody until August 14, 2018 at 1:45pm, at which time TFO Kuebler took custody of the device. The Device is currently in the possession of the FBI and I believe it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device were first seized by PPD Officers.

## TECHNICAL TERMS

12. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing

dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Pager: A pager is a handheld wireless device used to receive phone numbers and/or text messages through radio signals. Pagers receive signals through networks of transmitter/receivers, receiving communication from other wireless telephones/devices or traditional "land line" telephones. Pagers usually contain a record of the telephone numbers/messages received by the pager, as well as the date and time that the messages were received.

c. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

d. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some

GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

13. Based on my training, experience, use, and research, I know that the Device has capabilities that allows it to serve as a wireless telephone, digital camera, and portable media player. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used a particular device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

15. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

 b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

 c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

 d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

 e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

16. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

17. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

18. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

19. This affidavit has been reviewed by Assistant United States Attorney Jon Stanford.

Respectfully submitted,

_____
Joseph Sainato
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on August 31, 2018:

_____
Honorable Jerry H. Ritter
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is:

    1 – a Samsung cellular telephone, Model number SM-J327T1, IMEI number 355417092719134;

The above described property will hereinafter be referred to as the "Device." The Device is currently maintained by the FBI in Albuquerque, New Mexico. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data described in Attachment B.

## ATTACHMENT B

All records on the Device described in Attachment A, to include, but not limited to:

a. lists of contacts and related identifying information, which would demonstrate MIRABAL as a user of the Device;

b. cellular telephone account information, credit card payment information, financial records pertaining to the account and any other details pertaining to the account(s) established within the Device;

c. photographs stored on the Device;

d. messages sent from or received by the device

Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, photographs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.